UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE SALVATI INSURANCE GROUP, INC.,
and THOMAS SALVATI

      Plaintiffs,                            Case No. 14-cv-10702
                                              Hon. Matthew F. Leitman

v.

UTICA MUTUAL INSURANCE COMPANY,

      Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (ECF #10)

## INTRODUCTION

This is an insurance coverage dispute. In 2012, Plaintiff The Salvati Insurance Group, Inc. ("SIG") purchased an "errors and omissions" insurance policy from Defendant Utica Mutual Insurance Company ("Utica"). This policy requires Utica to defend SIG and its covered employees against certain claims.

On November 21, 2013, Michelle Brown ("Brown") sued SIG, its President Thomas Salvati ("Salvati"), SIG employee Carey Stevens ("Stevens"), and a company Stevens owns. Brown alleges that SIG, Salvati, and Stevens caused her to lose nearly $300,000 in high-risk investments. Salvati and SIG tendered Brown's lawsuit to Utica for coverage and defense, but Utica denied coverage and refused to defend Salvati and SIG. Salvati and SIG now claim in this action that

1

Utica has a duty to defend Brown's suit.  Utica, however, has no such duty because Brown's claims do not fall within the terms the applicable insurance policy – in fact, they are specifically excluded from coverage.  The Court therefore **GRANTS** Utica's Motion for Summary Judgment.

## FACTUAL BACKGROUND

A.    **The Policy**

SIG sells insurance to individuals and businesses.  In 2012, SIG purchased a Life Insurance Agents and Brokers Errors and Omissions Liability Policy (the "Policy") from Utica.  (*See* the Policy, ECF #12-2.)  The Policy provides that Utica "will pay on behalf of [SIG] all 'loss,' to which this insurance applies."  (*Id.* at Pg. ID 209.)  The Policy defines a "loss" as "any amount which [SIG] becomes legally obligated to pay as damages for any claim to which this insurance applies and shall include judgments and settlements."  (*Id.* at Pg. ID 208.)  The Policy further requires Utica "to defend [SIG and its insured employees] against any suit seeking those damages even if the allegations of the suit are groundless, false, or fraudulent."  (*Id.* at Pg. ID 209; internal quotation marks omitted.)  "However, [Utica has] no duty to defend … against any suit seeking damages for a wrongful act to which [the Policy] does not apply."  (*Id.*; internal quotation marks omitted.)

The Policy thereafter defines when a "loss" is covered, thus triggering Utica's duty to defend:

2

> The "loss" must arise of out "wrongful acts" **committed in the conduct of the insured's business** … by the insured or any person for whose "wrongful acts" the insured is legally liable **in rendering or failing to render professional services as**:
>
> > **(1)   A Life and Accident and Health Insurance Agent;**
> > **(2)   A General Insurance Agent;**
> > **(3)   A personal Producing General Agent;**
> > **(4)   A Managing Master or Brokerage General Agent;**
> > **(5)   An Insurance Consultant; or**
> > **(6)   A Notary Public.**

(*Id.* at Pg. ID 210) (emphasis added).

The Policy further specifies that Utica would provide coverage for losses arising out of certain other activities that are "part of the insured's professional services" only if "a premium has been charged for such coverage."   (*Id.*) Specifically, the Policy requires an insured to purchase an additional endorsement to receive coverage for:

> (5) (a) "Selling financial products" **as provided for in the Financial Products Coverage Endorsement**; [and] (b) "Selling mutual funds or variable annuities" **as provided for in the Mutual Fund and Variable Annuity Coverage Endorsement**[.]

(*Id;* emphasis added.)   It is undisputed that SIG did not purchase either the Financial Products Coverage Endorsement or the Mutual Fund and Variable

3

Annuity Coverage Endorsement from Utica.  (*See* Compl. ECF #10-7 at ¶20; *See also* Salvati's and SIG's Response Brief, ECF #12 at 13, Pg. ID 192.)

The Policy also contains express exclusions.  Specifically, the Policy states that it does not apply to:

> 13. a. **Any investment advice given or alleged to have been given relating to the performance of lack of performance of any investment** or resulting from variations in the value of any investment including, but not limited to, stocks, bonds, real estate, oil or gas, gold, silver, diamonds, **or any non-insurance investment.**
> [….]
>
> 14. Services as an attorney, accountant, actuary, tax preparer or tax consultant, real estate broker, security broker, security dealer, mortgage broker, **financial planner, or any other professional services unless such professional services are specifically insured hereunder and an additional premium paid.**

(*Id*. at Pg. ID 211.) (Emphasis added.)

## B.   Brown's Underlying Suit

On November 21, 2013, Brown filed suit against SIG, Salvati, Stevens, and a company Stevens owns in Wayne County Circuit Court.  (*See* "Brown's Complaint," ECF #10-5.)   All of Brown's claims relate to financial planning, financial advice, and investments made on her behalf; none relate SIG's primary insurance business.

Brown alleges that Stevens, while working for SIG, fraudulently and improperly induced her to make high-risk investments and that these investments

4

ultimately caused her to lose a substantial amount of money.  In particular, Brown alleges that "Stevens solicited [her] in an attempt to induce her to transfer her entire investment portfolio into his control based on … his claim that he could provide her with a higher rate of return than she was already receiving on her investments…" (*Id.* at ¶18.)   Brown claims that "Stevens met with [her] and prepared the necessary documents for her to sign and open an investment account" and that these documents "list[ed] Salvati as [her] financial advisor..." (*Id.* at ¶23.) Brown says that "[t]he investment trading directed by Mr. Stevens on [her] account included high risk investments that were not appropriate for [her] based on her financial circumstances…" and that she did not consent to these investments. (*Id.* at ¶27.)  She further claims that "Salvati and [SIG] knew, or should have known, that Mr. Stevens and [his company] were not a licensed [sic] and that the trades he directed for Ms. Brown were not suitable for her."  (*Id.* at ¶30.)  In all, Brown alleges that she "lost approximately $297,533.31 in ten months … as a direct and proximate result of the acts and omissions of Mr. Stevens … and the failure of Salvati and [SIG] to properly supervise Mr. Stevens…" (*Id.* at ¶29.)

Salvati and SIG are named in five counts of Brown's Complaint:

- In "Count II," Brown alleges that "Salvati and [SIG] owed [her] the duty of due and reasonable care, as well as those duties imposed by laws, rules

and regulations pertaining to financial advisors" (*id.* at ¶37), and that Salvati and SIG breached these duties. (*See id.* at ¶38.);

- In "Count III," Brown claims that Salvati and SIG are "investment advisors" and "investment advisor representatives" under Michigan law and that (1) they "are liable … for the conduct of Mr. Stevens…" and (2) they "received fees or other benefits from Mr. Stevens['] unsuitable trades on Ms. Brown's account…" (*Id.* at ¶¶48-51.);

- In "Count IV," Brown asserts that Salvati and SIG "unlawfully received a benefit from [her] including, without limitation, fees incurred for the trades made by Mr. Stevens … though [SIG]…" (*id.* at ¶55), and that it would be "inequitable for … [Salvati and SIG] to retain the benefits conferred upon them…" (*Id.* at ¶59.);

- In "Count V," Brown says that Salvati and SIG engaged in "concerted action" with Stevens in order to obtain control over her funds. (*See id.* at ¶¶62-66.); and

- Finally, in "Count VI," Brown claims that Salvati, SIG, and Stevens "illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of defrauding Ms. Brown out of her investment portfolio by investing in high risk and unsuitable investments and collecting fees for such transactions." (*Id.* at ¶68.)

6

Salvati and SIG have denied participating in or having any knowledge of Stevens' actions.  (*See* Salvati Affidavit, ECF #12-5 at ¶5b.)  They have also filed a cross-claim in Brown's action against Stevens alleging that Stevens illegally accessed SIG's computer in order to make certain unauthorized trades on Brown's account.  (*See* Frist Amended Cross-Claim at ECF #12-6.)

## C.   Salvati and SIG Tender Brown's Action to Utica and Utica Denies Coverage

After Brown served Salvati and SIG with her lawsuit, they tendered the claim to Utica for coverage and defense of her claims.  Salvati spoke with a Utica insurance adjuster about the claim and told the adjuster that he and his company "did not participate in, have knowledge of, acquiesce to or have any active involvement with the trades that form the basis for the allegations in [Brown's] Complaint."  (Salvati Aff. at ¶5b.)

On December 9, 2013, Utica formally denied Salvati and SIG coverage for Brown's suit.  (*See* the "Denial Letter," ECF #10-6.)  In the Denial Letter, Utica informed Salvati and SIG that the Policy "does not include either the Financial Products Coverage Endorsement [] or the Mutual Fund and Variable Annuity Coverage Endorsement [], nor have you been charged a premium for either Endorsement.  Therefore, the activities alleged in [Brown's] Complaint do not constitute professional services as required under the Insuring Agreement, and there is no coverage under the Policy for [Brown's] Complaint in its entirety."  (*Id.*

7

at 4, Pg. ID 166.)   Utica also told Salvati and SIG that even if the Policy had otherwise provided coverage, it still had no duty to defend Brown's suit because "several" exclusions applied to the allegations in Brown's Complaint.  (*See id.*)

## PROCEDURAL HISTORY

Salvati and SIG filed this action in the Macomb County Circuit Court on January 24, 2014.  (*See* Compl., ECF #10-7.)   Salvati and SIG requested a declaratory judgment that Utica had a duty to defend Brown's lawsuit.  (*See id.*)   Utica removed the action to this Court on February 13, 2014 (*see* Notice of Removal, ECF #1), and it moved for summary judgment (*see* ECF #12). The Court heard oral argument on August 13, 2014, and it now **GRANTS** Utica's motion.

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.

8

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

**A.    Applicable Law**

"An insurance company has a duty to defend its insured if the allegations of the underlying suit arguably fall within the coverage of the policy." *Citizens Ins. Co. v. Secura Ins.*, 755 N.W.2d 563, 566 (Mich. App. 2008) (internal quotation marks omitted). "The duty to defend arises from the language of the insurance contract. In determining whether there is a duty to defend, courts are guided by established principles of contract construction." *Id.* (internal citations omitted). As Michigan courts have long held:

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to

9

> look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

*Id.* at 566-567 (emphasis in original) (quoting *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. App. 1981)).

Courts, however, should "not hold an insurance company liable for a risk it did not assume." *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999). In addition, "[i]t is well-established that an insured has the initial burden of proving that its losses fall within the scope of the policy's insuring agreement." *Detroit Water Joint Venture v. Agriculture Ins. Co.*, 371 F.3d 336, 339 (6th Cir. 2004); *See also Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 n.6 (Mich. 1995) (internal quotation mark omitted) ("It is without dispute that the insured bears the burden of proving coverage…"). To the extent an insurer relies upon an exclusion to deny coverage, however, it has the burden to establish that the exclusion applies. *See Heniser*, 534 N.W.2d at 505 n.6 ("[T]he insurer must prove that an exclusion to coverage is applicable").

## B.    Salvati and SIG Have Failed to Establish That the Policy Covers the Allegations Made in Brown's Complaint

Salvati and SIG have argued, both in their briefing and at oral argument, that the Policy contains a "broad insuring agreement" that provides coverage for the financial-planning and advising activities that form the basis of Brown's claims.

10

(*See, e.g.,* Salvati and SIG Resp. Br. at 12, Pg. ID 191.) Salvati and SIG contend that this "broad insuring agreement" is embodied within the Policy language that requires Utica to cover any "loss" that "arise[s] out of wrongful acts **committed in the conduct of [SIG's] business**…" (The Policy at Pg. ID 210; internal quotation marks omitted; emphasis added.) As Salvati's and SIG's counsel explained at oral argument, under their reading of the Policy, the "conduct of SIG's business" includes *any* activity that generates revenue for SIG or that involves the use of *any* of SIG's property (such as its internet or telephone services), *even if that activity has nothing to do with SIG's sale of insurance and provision of insurance-related services*. At oral argument, Salvati and SIG argued that the investment advice and activity that form the basis of Brown's Complaint were "acts committed in the conduct of [SIG's] business" – and are therefore covered under the Policy – because Stevens (who provided the advice and completed the trades on Brown's account) operated out of SIG's offices and used SIG's computers and phones.

Salvati's and SIG's reliance on the Policy language concerning "acts committed in the conduct of [SIG's] business" is misplaced. Salvati and SIG fail to read that language in its proper context. As set forth above at p. 3, that language is immediately followed by a specific listing of the six business activities that the Policy covers – *e.g.*, SIG's services as a "Life and Accident and Health Insurance Agent" and as a "General Insurance Agent" (*id.*) – and the misconduct alleged in

11

Brown's Complaint does not even arguably fall within any of the six covered business activities.[1]

Furthermore, the Court must reject Salvati's and SIG's broad reading of the Policy because accepting their interpretation would lead to absurd results and would result in Utica having a limitless duty to defend claims against SIG. *See, e.g., Hastings Mut. Ins. Co. v. Safety King, Inc.*, 778 N.W.2d 275, 281 (Mich. App. 2009) ("[C]ontract terms should not be considered in isolation and contracts are to be interpreted to avoid absurd or unreasonable conditions and results").  For example, as Salvati's and SIG's counsel conceded at oral argument, under Salvati's and SIG's interpretation of the Policy, if one of SIG's employees opened a lemonade stand on SIG's property to generate additional revenue for SIG, Utica would be obligated to defend any lawsuit filed by a lemonade purchaser arising out

---

[1] The alleged misconduct that forms the basis of Brown's claims could perhaps be covered by the Financial Products Coverage Endorsement and/or the Mutual Fund and Variable Annuity Endorsement, but Salvati and SIG concede that SIG did not purchase either of these additional endorsements.  That these endorsements are available sharply undercuts Salvati's and SIG's argument that the Policy covers Stevens' investment-related misconduct.  Indeed, if the Policy covered that misconduct without the endorsements, as SIG and Salvati claim it does, then there would be no reason for those endorsements to exist.  It would be unreasonable to adopt a reading of the Policy that renders the endorsements meaningless surplusage.  (To be clear, the Court reaches its decision in this case based upon the language of the Policy without regard to the language of the endorsements.  The Policy language, standing alone, defeats Salvati's and SIG's claim.  The existence of the endorsements – that SIG did not purchase – simply underscores that Salvati and SIG are not entitled to coverage.)

12

of his purchase or consumption of lemonade.  Likewise, under Salvati's and SIG's reading of the Policy, if a SIG employee used SIG's telephone line to commit a crime wholly unrelated to the sale of insurance (*e.g.*, calling in a bomb threat), and the company was later sued as a result, Utica would have an obligation to defend that suit as well.  The Policy cannot reasonably be read to impose upon Utica support such an all-encompassing duty to defend.

Finally, Salvati and SIG insist that Utica has a duty to defend them because they had no knowledge of, and did not authorize, Stevens' conduct.  However, while their lack of knowledge may very well be a strong defense to Brown's claims in the underlying action, Utica's duty to defend arises not from Salvati's or SIG's state of mind, but, instead, from the scope of coverage provided by the Policy's express language.  For all the reasons explained above, that Policy language does not cover the alleged misconduct by Stevens underlying Brown's claims.[2]

Because the plain language of the Policy makes clear that Salvati and SIG are not entitled to coverage for, and/or to a defense against, the claims in Brown's Complaint, Utica is entitled to summary judgment.

---

[2] Moreover, Salvati's and SIG's insistence that Stevens' conduct was unknown to them and unauthorized undermines their argument here that his activities were part of SIG's "business" such that they are covered under the Policy.

**C.**     **Utica is Additionally Entitled to Summary Judgment Because the Claims against Salvati and SIG in Brown's Complaint are Specifically Excluded From Coverage under the Policy**

Utica is entitled to summary judgment on a second, alternative ground: the Policy contains several exclusions that specifically apply to bar the coverage Salvati and SIG seek.   The Policy, for example, excludes coverage for "[a]ny investment advice given or alleged to have been given relating to the performance or lack of performance of any investment…"   (The Policy at Pg. ID 211.)   The Policy further excludes coverage for "[s]ervices as a …. financial planner … or any other professional services unless such professional services are specifically insured [under the Policy] and an additional premium paid."   (*Id.*)

In this case, Brown's claims relate to investment advice she received and/or activities performed in a financial planning capacity.   And while SIG could have paid an additional premium and obtained additional endorsements to the Policy – or acquired additional insurance from another insurer – to cover these activities, SIG indisputably did not do so.   Thus, the exclusions further bar Salvati's and SIG's claim here.   Utica is entitled to summary judgment on this alternative ground as well.

14

## <u>CONCLUSION</u>

For all of the reasons stated in this Opinion and Order, Utica's Motion for Summary Judgment (ECF #12) is hereby **GRANTED**.


                                                    s/Matthew F. Leitman
                                                    MATTHEW F. LEITMAN
                                                    UNITED STATES DISTRICT JUDGE

Dated:  August 27, 2014


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 27, 2014, by electronic means and/or ordinary mail.

                                                    s/Holly A. Monda
                                                    Case Manager
                                                    (313) 234-5113

15